UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cr-00083-FDW-DCK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIONEL TEASLEY, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on the Government's Objections, (Doc. No. 26), to Magistrate Judge Keesler's Memorandum and Recommendation ("**M&R**"), (Doc. No. 24). The Government seeks review of the M&R's recommendation that this Court grant Defendant's Motion to Suppress Evidence Based on Fourth Amendment Violations, (Doc. No. 15). This matter is now ripe for review.

For the reasons set forth below, Judge Keesler's M&R is **AFFIRMED** and **ADOPTED IN PART and REJECTED IN PART**; the Government's Objections are **SUSTAINED IN PART and OVERRULED IN PART**; Defendant's Objection is **OVERRULED**; and Defendant's Motion to Suppress is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

On March 16, 2022, Defendant Lionel Teasley ("**Defendant**") was indicted in the Western District of North Carolina for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (See Doc. No. 1). In the Government's Objections to the Findings, Conclusions, and Recommendation of Magistrate Judge Keesler's M&R, the Government does not dispute Judge Keesler's discussion of the pertinent facts or the procedural history. (Doc. No.

1

26).[1]  Instead, the Government disagrees with Judge Keesler's legal conclusions and recommendation, arguing they are inconsistent with the M&R's factual findings and the law. (Id.).  Additionally, Defendant agrees with, and incorporates by reference, the M&R's factual summary in his Response in Support of the Magistrate Judge's Memorandum and Recommendation to Suppress Evidence.  (Doc. No. 28, p. 2).  Accordingly, the Court hereby ADOPTS and incorporates by reference Sections I and II of the M&R as if fully set forth herein. (Doc. No. 24, p. 1–6).

In his Motion to Suppress, (Doc. No. 15), Defendant seeks to suppress "any and all evidence derived from unlawful traffic stop and seizure where there was no reasonable suspicion or probable cause for an Alcohol & Beverage Commission ("ABC") officer to stop and seize Mr. Teasley and the vehicle he was operating."   (Id. at 1).  This evidence includes Defendant's statements to Officer Stephen A. Smith and the firearm, a Glock, model 19, pistol, (Doc. No. 1), found inside the vehicle.  Defendant contends his statements and the firearm must be suppressed because they were products of an unlawful seizure and a search lacking probable cause, in violation of the Fourth Amendment and the Fifth Amendment's Due Process Clause.  (Doc. No. 15).

On January 20, 2023, after holding a hearing on Defendant's Motion to Suppress, Judge Keesler entered his M&R, (Doc. No. 24), wherein he considered the "central issues presented by Defendant's [Motion to Suppress,]" including whether "law enforcement, notably an ABC

---

[1] In its Objections, the Government instead asserts that the "findings of fact . . . do not support the suppression of the seized firearm and Teasley's statement regarding the firearm."  (Doc. No. 26, p. 1).  Upon review of the Government's contentions, it is clear that the Government takes issue not with the M&R's description of the factual summary, but rather with the Magistrate Judge's conclusion and recommendation stemming from those facts.  Id. Further, while Defendant objects to the Government's statement of facts, Defendant's objections likewise implicate legal conclusions.  (Doc. No. 28, p. 2–3).  The Court discusses each of Defendant's contentions below.

officer investigating a misdemeanor larceny of a tequila bottle," had reasonable suspicion for the traffic stop, for removing Defendant from the vehicle, for frisking Defendant, for searching the vehicle, and for detaining Defendant during this process. (Id. at 8). Judge Keesler concluded the ultimate issue was whether the length of the traffic stop violated the Fourth Amendment. (Id.). He determined: (1) the traffic stop was valid; (2) Officer Smith's removal of Defendant from the vehicle was to protect officer safety and was thus permissible; (3) the frisk was justified for the same reason because Defendant had already informed Officer Smith that there was a firearm in the vehicle; and (4) the search of the vehicle was an acceptable protective search justified by the circumstances of the traffic stop. (Id. at 9–10). However, Judge Keesler concluded that the traffic stop was unconstitutionally prolonged, in violation of the Fourth Amendment. (Id. at 14). He determined that "Officer Smith's actions to investigate a potential firearm-related crime went beyond a mere 'detour' from the traffic mission, for in fact, almost from the outset, Officer Smith abandoned the purpose of the traffic stop. That complete abandonment of the mission of the traffic stop is not tolerated by the Fourth Amendment." (Id.) (internal citation omitted). As a result, Judge Keesler's recommendation to this Court is to grant Defendant's Motion to Suppress both the firearm seized, and Defendant's statements made to Officer Smith, during the traffic stop. (Id.).

The Government timely filed its Objections to the M&R on February 2, 2023, (Doc. No. 26), and Defendant filed his Response in Support of the M&R and in Opposition to the Government's Objections on February 16, 2023, (Doc. No. 28). Finally, on March 9, 2023, Defendant filed a Notice of Supplemental Authority in Support of the M&R. (Doc. No. 29).

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). See Fed. R. Crim. P. 59(b)(1). A party may file written objections to a magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections must specifically identify those findings objected to.") (cleaned up). "Frivolous, conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at 421 (quotation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Thus, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Id.; see also Jones v. Hamidullah, No. 2:05-2736-PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting objections to an M&R "on the whole are without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]"). General or conclusory objections result not only in the loss of *de novo* review by the district court but also in waiver of

appellate review. <u>Tyler v. Beinor</u>, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); <u>United States v. Woods</u>, 64 F. App'x 398, 399 (4th Cir. 2003) (per curiam). If proper objections are made, a district court will review the objections under a *de novo* standard. 28 U.S.C. § 636(b)(1). Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the M&R. <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir. 1983).

### III. DISCUSSION

The Government's overarching objection to the M&R's conclusion—that the traffic stop violated the Fourth Amendment, requiring the suppression of both Defendant's statements and the firearm—is that the evidence was lawfully obtained, such that this Court must deny the Motion to Suppress. (Doc. No. 26, p. 6). To that end, the Government cites three specific objections. First, the Government argues several of Judge Keesler's "appropriate" findings require a conclusion that the seizure was consistent with the Fourth Amendment, contrary to his ultimate recommendation that the firearm be suppressed. (<u>Id.</u> at 6–9). Next, the Government objects to the M&R "to the extent it recommends application of the exclusionary rule to [Defendant's] statements." (<u>Id.</u> at 9). Third, the Government objects to the M&R in that it declined to decide whether Officer Smith had either reasonable suspicion or probable cause to investigate and arrest Defendant. (<u>Id.</u> at 10).

In addition to the Government's Objections, Defendant "asserts a limited objection to the M&R's finding . . . that Officer Smith had initial probable cause" or the authority to seize Defendant at all. (Doc. No. 28, p. 7). Thus, the parties' objections dispute whether: (1) Officer Smith had statutory authority to conduct the traffic stop in the first place; (2) the traffic stop's

duration was unconstitutionally prolonged; (3) either reasonable suspicion or probable existed; and (4) the evidence must be suppressed. Accordingly, this Court will conduct a *de novo* review of these issues and will review the remainder of the M&R for clear error.

### A. Defendant's Objection to Officer Smith's Authority to Conduct the Traffic Stop

Defendant's sole objection to the M&R asserts that Officer Smith did not have the ability to conduct the traffic stop for two reasons: (1) as an ABC officer, he lacked the statutory authority to enforce traffic laws; and (2) he lacked any authority to investigate a misdemeanor offense that occurred outside his presence.[2] Judge Keesler determined Officer Smith did have the authority to initiate the traffic stop upon learning the vehicle Defendant was driving had an expired registration tag, because under North Carolina law, it is a Class 3 misdemeanor "to willfully display an expired license or registration plate on a vehicle." N.C.G.S. § 20-111(2). For the following reasons, the Court finds Defendant's objections are without merit and holds that Officer Smith was legally authorized to initiate the traffic stop in this case.

Defendant first argues Officer Smith lacked the statutory authority to enforce traffic laws, making the entire traffic stop a Fourth Amendment violation. Defendant concedes that as an ABC officer, Officer Smith, "is a sworn police officer and that his authority to enforce North Carolina laws is derived from N.C.G.S. § 18B-501." (Doc. No. 28, p. 2). However, Defendant contends the statute's subject matter and territorial limitations preclude ABC officers from enforcing "non-ABC laws" without an authorizing resolution from the local ABC Board. Id. He

---

[2] Defendant raises these arguments in two places in his Response and in both, he frames the issue as one of fact. (Doc. No. 26, p. 2–5, 7–9). However, these objections turn not on what took place during the traffic stop, but instead on whether Officer Smith had legal authority under North Carolina's statutory scheme and/or the Fourth Amendment.

6

argues that because there is no such resolution, Officer Smith acted beyond his statutory authority.

Section 18B-501(b), which governs local ABC officers, provides:

> (b) Subject Matter Jurisdiction. After taking the oath prescribed for a peace officer, *a local ABC officer may arrest and take other investigatory and enforcement actions for any criminal offense*; however, the primary responsibility of a local ABC officer is enforcement of the ABC laws and Article 5 of Chapter 90 (The Controlled Substances Act).

N.C.G.S. § 18B-501(b) (emphasis added). Thus, the statute expressly states that an ABC officer has subject matter jurisdiction to arrest or investigate "any criminal offense." N.C.G.S. § 18B-501(b); see also McNeill v. Durham Cnty. ABC Bd., 368 S.E.2d 619, 623 (N.C. 1988) (Meyer, J., concurring in part).[3] That the statute also establishes an ABC officer's "primary responsibility" is to enforce ABC laws does not negate the express grant of authority to take enforcement actions regarding non-ABC offenses as well. Id. Here, Officer Smith witnessed Defendant violating N.C.G.S. § 20-111(2) by driving a vehicle with an expired registration plate. Thus, he had clear, express statutory authority to investigate and enforce the traffic violation. Further, the limitations contained in subsection (e) do not apply here, because neither a state nor a federal agency requested Officer Smith's assistance; he witnessed a misdemeanor, and he was authorized to investigate it. N.C.G.S. § 18B-501(e). Thus, Defendant's argument is without merit and is OVERRULED.

Defendant next argues Officer Smith lacked any authority to stop Defendant because "[p]olice officers have no authority under state or federal law to arrest a citizen for a suspected

---

[3] Justice Meyer emphasized: "ABC officers are required by statute to take the oath prescribed for all peace officers. Moreover, although their primary responsibilities relate to the enforcement of ABC laws . . . they have the clear authority to make arrests and to 'take other investigatory and enforcement actions for any criminal offense.'" McNeill, 368 S.E.2d at 623 (Meyer, J., concurring in part) (citing N.C.G.S. § 18B-501(b) (1983); State v. Taft, 124 S.E.2d 169 (1962)) (internal citation omitted).

misdemeanor *that occurred outside their presence*."[4]  (Doc. No. 28, p. 9; <u>see also</u> <u>id.</u> at 2–3). Defendant believes the following facts underscore Officer Smith's inability to conduct the traffic stop: (1) the stop was a pretext for investigating the larceny; (2) he did not personally observe the larceny; (3) he had not been assigned to investigate the theft; and (4) he did not have access to the DMV and NCIC databases.  (<u>Id.</u> at 2–3, 7–9).  Judge Keesler determined this argument fails because Officer Smith observed the traffic violation, justifying the traffic stop.  This Court agrees.

The Supreme Court has repeatedly held that "[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional."  <u>Whren v. U.S.</u>, 517 U.S. 806, 813 (1996). Rather, precedent "foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."  <u>Id.</u>  Here, it is irrelevant that Officer Smith did not personally witness the misdemeanor shoplifting offense he was investigating.  He did personally witness Defendant driving with expired tags, and he was authorized to stop the vehicle to enforce N.C.G.S. § 20-111(2).  For that reason, it is also immaterial that Officer Smith lacked access to police databases and that the ABC had not yet tasked him with investigating the theft.  Thus, Officer Smith did have the authority to initiate the traffic stop, and Defendant's objection to the M&R is without merit and is OVERRULED.

**B.  The Government's Objections to the Length of the Traffic Stop**

The Government first objects to the M&R's conclusion that Officer Smith "abandoned the purpose of the traffic stop," resulting in a prolonged detention in violation of the Fourth

---

[4] Defendant's attempt to argue law enforcement officers lack authority to arrest individuals for committing a misdemeanor offense outside of their presence "misses the mark."  (Doc. No. 24, p. 9).  Officer Smith witnessed a misdemeanor—Defendant driving a vehicle with expired registration.  Simply because Officer Smith was investigating a separate misdemeanor at the time does not preclude him from initiating a traffic stop.

8

Amendment.  (Doc. No. 24, p. 11).  Instead, the Government argues that the M&R's key findings—which it believes were correct—require the opposite conclusion.

Because neither party objects to the M&R's conclusions regarding the validity of the initial sequence of events during the traffic stop, the Court hereby ADOPTS and incorporates by reference the M&R's analysis of those actions.  (Id. at 9–10).  In summary: (1) the initial traffic stop was valid based on the expired registration; (2) Defendant's removal from the vehicle and frisk were permissible to protect officer safety; and (3) the search of the vehicle constituted a valid protective search.  (Id.).  Thus, the admissibility of the evidence turns on whether the stop was unconstitutionally prolonged in violation of the Fourth Amendment.  For the following reasons, the Court finds that was, and that the Government's objections are without merit.

The "[t]emporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment, Wren, 517 U.S. at 809–10, and such a traffic stop is "more analogous to a so-called '*Terry* stop' . . . than to a formal arrest."  Rodriguez v. U.S., 575 U.S. 348, 354 (2015) (quoting Knowles v. Iowa, 525 U.S. 113, 117 (1998)).  Thus, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns."  Id. (citing Illinois v. Caballes, 543 U.S. 405, 407 (2005)) (internal citation omitted).  This includes deciding whether to issue a ticket and other "ordinary inquiries incident to [the traffic] stop."  Id. at 255.  Because traffic stops are "especially fraught with danger to police officers," the Fourth Amendment also permits "negligibly burdensome precautions" that allow the officer "to complete his mission safely."  Id. at 356.  These checks

9

"serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." Id. at 355. Thus, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Id.

Additionally, unrelated investigations are permissible as long as they do not lengthen the detention beyond "the time needed to handle the matter for which the stop was made." Id. at 350. Thus, the officer may not conduct unrelated investigations "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez, 575 U.S. at 355. This is because "[o]n-scene investigation into other crimes . . . detours" from the traffic stop's mission, since "[h]ighway and officer safety are interests different in kind from the Government's endeavor to detect crime in general." Id. at 356–57.

Therefore, "the critical question, then, is not whether the [unrelated investigation] occurs before or after the officer issues a ticket, . . . but whether conducting the [unrelated investigation] 'prolongs'—i.e., adds time to—'the stop.'" Id. at 357. This inquiry "depends on what the police in fact do," and whether the officer prolonged the traffic stop beyond "the amount of time reasonably related to complete [the stop's] mission" expeditiously and diligently. Id. (cleaned up). Thus, the Court must determine whether Officer Smith's investigation unconstitutionally prolonged the traffic stop. In light of these standards, the Court agrees with the M&R's conclusion that Officer Smith prolonged Defendant's detention far beyond the time reasonably required to diligently complete the tasks tied to the traffic infraction.

Here, Officer Smith initiated a valid traffic stop at 3:25 p.m. after observing Defendant driving a vehicle with expired registration plates. (Doc. No. 24, p. 4); N.C.G.S. § 20-111(2). Thus, he was permitted to detain Defendant to expeditiously decide whether to issue him a traffic

10

ticket and to complete ordinary inquiries related to the stop. Rodriguez, 575 U.S. at 355. Within seconds of being pulled over, Defendant informed Officer Smith that he had a firearm, and because Defendant was unrestrained and there was a passenger, Officer Smith was permitted to ask Defendant to exit the vehicle, to perform a frisk, to search the vehicle, and to seize the firearm for the duration of the traffic stop. Officer Smith completed these protective measures within approximately sixty-five seconds of approaching the vehicle. (Doc. No. 26, p. 4). Similarly in line with the purpose of the traffic stop, Officer Smith asked Defendant for his license, and after Defendant said he did not have it with him, Officer Smith directed Defendant to walk to his patrol vehicle to verify his identity. (Doc. No. 24, p. 4; Doc. No. 27, p. 31). However, from this point on, the entire focus of Defendant's detention shifted from addressing the traffic violation to "detect[ing] evidence of ordinary criminal wrongdoing." Rodriguez, 355.

Officer Smith was entitled to investigate unrelated matters, including the larceny and other concerns that arose during the lawful detention, so long as it did not extend the time reasonably required to handle the traffic violation. Rodriguez, 575 U.S. at 355. Importantly, Officer Smith never mentioned the vehicle's expired registration. (Doc. No. 24, p. 5). Officer Smith also testified that while walking to his patrol car, he told Defendant: "you're not the person I'm looking for," in relation to the larceny he was originally investigating. (Doc. No. 27, p. 57). Upon arriving at his patrol vehicle, Officer Smith discovered Defendant's license weas suspended, but he testified "he wasn't going to charge" Defendant for that traffic violation either. (Id. at 59). Nevertheless, he did not allow Defendant to leave. (Id.). Rather, it appears that from the outset Officer Smith "definitively abandoned the prosecution of the traffic stop and embarked

11

on another sustained course of investigation." U.S. v. Digiovanni, 650 F.3d 498, 508–09 (4th Cir. 2011).

Thus, by this point in the traffic stop, Officer Smith had declined to pursue in any way the expired registration—the justification for the stop, decided not to charge Defendant for driving with a suspended license, and determined Defendant was not involved in the misdemeanor larceny. Having resolved the initial and underlying grounds for the traffic stop, absent reasonable suspicion of other criminal activity, Officer Smith was required to let Defendant leave. Instead, he began the unrelated investigation into Defendant's criminal history, resulting in a stop that lasted for approximately forty-six minutes. (Doc. No. 24, p. 5). Such a prolonged detention beyond the scope of the traffic stop's mission, without reasonable suspicion, violates the Fourth Amendment.

Therefore, the Court OVERRULES the Government's objection and agrees with the M&R's finding that Officer Smith abandoned the purposes of the traffic stop.[5] Instead, the traffic stop was prolonged beyond the time reasonably required to address the traffic violation, and the Court must now determine whether Officer Smith had the requisite justification to do so.

### C. The Government's Objection that the Prolonged Detention Was Justified

The Government next objects to the M&R's conclusion that Officer Smith lacked justification to prolong the traffic stop. Warrantless searches and seizures are presumptively unreasonable, in violation of the Fourth Amendment, unless one of a limited number of

---

[5] Judge Keesler recommended excluding both the firearm and the statements because "Officer Smith's actions cannot be characterized as even *prolonging* the stop, for the traffic stop never even really started. One cannot prolong a task that one has not begun." (Doc. No. 24, p. 12, 14). However, the Court disagrees to the extent that it concludes that all evidence must be excluded. As noted above, portions of the traffic stop were consistent with the Fourth Amendment. Only when Officer Smith completely abandoned the purpose of the traffic stop did the detention become unreasonable. Further, as discussed below, because Officer Smith lacked justification for the prolonged detention, the evidence obtained after—but not before—that point must be suppressed.

12

exceptions exists to justify it. Katz v. U.S., 389 U.S. 347, 357 (1967). In arguing the evidence—both the statements and the firearm—was seized consistently with the Fourth Amendment, the Government advances two grounds as justification for Defendant's prolonged detention: reasonable suspicion and probable cause. The Government contends that Officer Smith had both reasonable suspicion and probable cause in this case, making the length of the detention irrelevant, and it disagrees with the M&R in that Judge Keesler declined to decide whether either justification was present. The Court will address each below.

### 1. Reasonable Suspicion to Investigate

As explained above, while an officer can pursue unrelated investigations during a traffic stop, he "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez, 575 U.S. at 355. To show reasonable suspicion, "a police officer must offer 'specific and articulable facts' that demonstrate at least 'a minimal level of objective justification' for the belief that criminal activity is afoot." U.S. v. Bowman, 884 F.3d 200, 213 (4th Cir. 2018) (quoting U.S. v. Branch, 537 F.3d 328, 336 (4th Cir. 2008)). "Reasonable suspicion is a commonsense, nontechnical standard . . . that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. (quoting U.S. v. Palmer, 820 F.3d 640, 649–50 (4th Cir. 2016); Ornelas v. U.S., 517 U.S. 690, 695 (1996)) (internal citation omitted). "The totality of the circumstances of each case' must demonstrate that the 'detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Id. (quoting Williams, 808 F.3d at 246). Still, "[t]he reasonable suspicion standard is less demanding than the probable

13

cause standard or even the preponderance of the evidence standard." Id. (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).

However, the Fourth Circuit has repeatedly held that "where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention. Permitting such a justification would eviscerate Fourth Amendment protections for lawfully armed individuals in those states." U.S. v. Black, 707 F.3d 531, 540 (4th Cir. 2013). In Black, the court emphasized it was "undisputed" that North Carolina law allows individuals to openly carry, so an officer's lack of knowledge regarding "whether [the defendant] was lawfully in possession of the gun" could not warrant a criminal history check, because "[b]eing a felon in possession of a firearm is not the default status." Id. Thus, mere possession of a firearm without "something 'more'" cannot justify a prolonged investigatory detention. Walker v. Donahoe, 3 F.4th 676, 682 (4th Cir. 2021); see also U.S. v. Cloud, 994 F.3d 223, 247 (4th Cir. 2021).[6]

Here, the Government contends the facts that arose at the inception of the traffic stop established, at minimum, reasonable suspicion. Officer Smith testified that Defendant informed him he had a firearm, told him it fell between his seat and the center console, pointed to where it was, and was "being very cooperative and very polite." (Doc. No. 27, p. 20). Officer Smith further testified that when he went to retrieve the firearm, "it wasn't visible, it wasn't in plain view," leading him to be concerned that either Defendant or the passenger, who were both unrestrained, could grab the firearm. (Id. at 20–21). Thus, under the totality of the circumstances at this time, the only facts that could support reasonable suspicion of criminal

---

[6] In Cloud, the Court held that although "North Carolina is an *open* carry state . . . it specifically outlaws the *concealed* carrying of firearms in public places without a permit," and the officer's direct observation of the defendant attempting to conceal the firearm is an additional factor beyond mere possession that "is plainly relevant to a finding of reasonable suspicion." Cloud, 994 F.3d at 247.

14

activity were that there was a firearm in the vehicle and that it was not visible. This, without more, does not create reasonable suspicion to justify Defendant's forty-six-minute detention, and there was nothing "more" about Defendant's possession of a firearm to justify his lengthy seizure.

To support its argument that reasonable suspicion, the Government cites N.C.G.S. § 14-269(a1), which makes it "unlawful for any person *willfully and intentionally* to carry concealed about his or her person any pistol or gun," unless they have a concealed carry permit. "Thus, the focus of the crime is whether a defendant carried a weapon, while outside his own premises, and intentionally concealed that weapon about his person." State v. Mbacke, 703 S.E.2d 823, 830 (N.C. Ct. App. 2011), rev'd on other grounds, 721 S.E.2d 218 (2012) (citing State v. Dixon, 19 S.E. 364, 364 (1894)). The Government argues the firearm's location, plus Defendant's failure to immediately inform Officer Smith that he had a concealed carry permit, gives rise at least to reasonable suspicion that he was violating North Carolina law. The Court disagrees.

Based on the record, and on Officer Smith's testimony in particular, nothing here indicates Defendant was intentionally concealing his firearm. Though the firearm was between the driver's seat and the center console, Defendant immediately told Officer Smith of its presence, explained why it was not visible, and identified its precise location. Further, Officer Smith did not know whether the firearm was lawfully possessed, nor did he know whether Defendant was a convicted felon, so he detained him for approximately forty-three minutes to investigate Defendant's criminal status. (Doc. No. 27, p. 46, 81). However, possession alone does not create a particularized, reasonable suspicion justifying Defendant's detention, and "[b]eing a felon in possession of a firearm is not the default status," Black, 707 F.3d at 540.

15

Under the totality of the circumstances on the record, neither Officer Smith's testimony, nor the Government's brief, points to any additional factors supporting reasonable suspicion. Accordingly, Defendant's objection to the M&R is OVERRULED. The Court holds that Officer Smith did not have reasonable suspicion to detain Defendant to investigate whether he was lawfully permitted to have the firearm.[7]

       2.   *Probable Cause to Arrest*

The Government also attempts to justify Defendant's detention by arguing that upon discovering Defendant possessed a firearm that had fallen between the seats, Officer Smith had probable cause to arrest him for violating N.C.G.S. § 14-269. "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" U.S. v. Dickerson, 27 F. App'x. 236, 242 (4th Cir. 2001) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). In determining whether probable cause existed, courts may consider "[a]ll of the circumstances known to the officer at the time of the arrest." Id. However, because the probable cause standard is more demanding than that required for reasonable suspicion, where the facts do not establish reasonable suspicion, they cannot give rise to probable cause. See Bowman, 884 F.3d at 213.

For the same reasons outlined above, the Court disagrees that Defendant's mere possession of a firearm creates reasonable doubt, much less probable cause to arrest. The

---

[7] The Government attempts to argue that the M&R's reading of Rodriguez "would mean that even if Officer Smith observed a dead body in Teasley's back seat, he would first have to issue a citation for the expired registration before making any inquiry into the presence of a corpse." (Doc. No. 26, p. 11). However, this overlooks the fact that a body in the back of a car is clear, indisputable evidence of criminal activity, whereas the mere possession of a firearm, without more, is not. Accordingly, this argument is without merit.

Government attempts to argue that Defendant's hand gestures and his statement that there was a firearm in the vehicle "establish more than a fair probability that officers would find evidence of a gun crime in the car." (Doc. No. 26, p. 7). In support, the Government cites State v. Best, 713 S.E.2d 556, 562 (N.C. Ct. App. 2011) as "holding that a firearm on the floor of a car in close proximity to its driver is evidence of carrying a concealed weapon in violation of N.C. Gen. Stat. § 14-269(a1)." (Doc. No. 26, p. 7). However, the Court disagrees both with Defendant's reading of the holding in Best, as well as with its impact here.

In Best, the court addressed the issue of "whether there was sufficient evidence of [the defendant's] possession of the firearm," which the officers found in the vehicle he was driving. Best, 713 S.E.2d at 561. There, the court held that the location of the firearm, the defendant's admission that he owned the firearm, and the testimony corroborating the defendant's ownership, all evidenced his constructive possession of the firearm, which supported his convictions for carrying a concealed firearm without a permit and possession of a firearm by a convicted felon. Id. at 562. The court emphasized: "Where contraband is found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." Id. at 561 (quoting State v. McNeil, 677 S.E.2d 444, 449 (2009)) (cleaned up). Thus, Best did not hold that a firearm in a defendant's vehicle was *per se* evidence of a crime. Instead, the court held that the firearm's location is indicative of constructive possession for establishing the required elements of firearms crimes. Id. at 562; [8] see also U.S. v. Cloud, 994 F.3d 233, 248 (4th Cir. 2021).

---

[8] The court in Best concluded that "the fact that the revolver was found in a van driven by Defendant, standing alone, might be sufficient to permit a reasonable inference that Defendant possessed the firearm in question." Best,

17 of 27

Here, Defendant does not dispute his possession of the firearm; instead, he contends that his possession alone did not establish probable cause for his arrest. Accordingly, Best is not dispositive of the issue. Defendant's possession of the firearm is insufficient to give rise to probable cause that he was committing a firearm offense, and as such, the Government's argument fails. Therefore, the Court OVERRULES the Government's objection, and holds that Officer Smith did not have probable cause to justify the prolonged detention and arrest of Defendant.

### D. The Government's Objection to the Suppression of the Evidence

Finally, the Government objects to the M&R's conclusion that Officer Smith abandoned the purpose of the traffic stop in violation of the Fourth Amendment, requiring the suppression of the firearm and Defendant's initial statements to Officer Smith. "The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." Murray v. U.S., 487 U.S. 533, 536 (1998) (internal citations omitted). Further, the rule "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" Id. at 536–37 (quoting Nardone v. U.S., 308 U.S. 338, 341 (1939)). Thus, evidence obtained in violation of a defendant's constitutional rights will be excluded unless an exception to the exclusionary rule applies. Therefore, the Court must determine whether the firearm, the

---

713 S.E.2d at 562. This is not the same thing as holding that the firearm's presence in the vehicle, on its own, shows that Defendant was carrying a concealed weapon in violation of North Carolina law.

statements, or both, were obtained in contravention of Defendant's constitutional rights such that they must be suppressed.

### 1. *The Firearm*

From the moment that Officer Smith seized the firearm at issue in this case, the investigation took three turns. First, Officer Smith completely abandoned the original mission of the traffic stop: to investigate and address the traffic violation. In fact, Officer Smith never informed Defendant that he was pulled over for expired registration plates, nor did he take any steps to investigate the offense. Further, despite discovering that Defendant was driving with a suspended license—an offense closely connected to the purpose of the traffic stop, i.e., "ensuring that vehicles on the road are operated safely and responsibly," Rodriguez, 575 U.S. at 355, he quickly decided not to charge Defendant for that violation either. Second, Officer Smith abandoned the investigation that provided his ulterior motive for stopping Defendant's vehicle: within the first few minutes, he informed Defendant he was not the person he was looking for in connection to a misdemeanor theft from an ABC store. Instead, as soon as Officer Smith realized Defendant had a firearm, the purpose of the traffic stop shifted a third time: to determining whether Defendant was a felon in possession of that firearm. Such an investigation was not an "ordinary inquir[y] incident to [the traffic] stop," nor was it completed in an expeditious manner within the "time reasonably required to complete [the stop's] mission." Id. at 357. Rather, Officer Smith stopped all other investigations and began looking into Defendant's criminal history. He first checked his own databases and then called the Mint Hill Police Department for assistance. (Doc. No. 24, p. 4–5). The Mint Hill Police arrived on the scene at 4:07 p.m., approximately forty-two minutes after the traffic stop began. Id. at 5. Once

there, the Mint Hill officer placed a call to dispatch, wherein he and Officer Smith finally confirmed Defendant was a convicted felon.  Id.  Only then did Officer Smith place Defendant under arrest.  Such a detour from the mission of the traffic stop is neither *de minimis* nor justified in this case.  The Court is unaware of any traffic violation that requires forty-six minutes for an officer to issue a citation.  Instead, it is the very type of on-scene investigation into other crimes that Rodriguez forbids.  Because Officer Smith lacked reasonable suspicion or probable cause to justify the detention, the prolonged stop violates Defendant's Fourth Amendment rights.

The Government contends that the length of Defendant's detention is irrelevant, and that the firearm is admissible, regardless of whether Officer Smith impermissibly prolonged it for three reasons: (1) the officer safety or protective search doctrine, (2) the automobile exception, and (3) the plain view doctrine.  The Government argues that in light of these doctrines, none of the rationales permitting the seizure of the firearm depend on the continued pursuit of the traffic violation.  However, the Court finds that these doctrines are inapplicable and thus fail to remedy the constitutional violation.

First, the Government contends that the seizure of the firearm was justified by officer safety.  Because traffic stops are "especially fraught with danger to police officers," U.S. v. Robinson, 846 F.3d 694, 699 (4th Cir. 2017), officers may conduct a protective search "if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." U.S. v. Griffin, 589 F.3d 148, 153 (4th Cir. 2009) (quoting Michigan v. Long, 463 U.S. 1032, 1049 (1983)); see also U.S. v. Buster, 26 F.4th 627, 634 (4th Cir. 2022).  However, the purpose of

20

protective searches "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993).

Here, the Government is correct that Defendant's admission that he had a firearm at the beginning of the traffic stop permitted Officer Smith to seize the firearm in the interest of officer safety. This is especially true considering both Defendant and the passenger were unrestrained for the duration of the traffic stop. However, the presence of a firearm justifies only Officer Smith's reasonable belief that Defendant—"whose propensities [were] unknown" at that time— was armed and potentially dangerous. See Robinson, 846 F.3d at 699. This does not create reasonable suspicion or probable cause that Defendant was committing a crime, nor does it justify the prolonged investigatory detention leading to Defendant's arrest.

The Fourth Amendment permits protective searches only where they are "strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby" so as "to allow the officer to pursue his [initial] investigation without fear of violence." Dickerson, 508 U.S. at 373. It does not provide that officer with permission to use that search to begin the unrelated "endeavor to detect crime in general," absent reasonable suspicion that other criminal activity is afoot. Rodriguez, 575 U.S. at 357. Because that is exactly what happened in this case, and because, as outlined above, Officer Smith did not have the requisite reasonable suspicion to investigate a firearm crime, officer safety fails to justify the forty-six-minute-long detention here.

The Government's argument that because the firearm was seized lawfully under the protective search doctrine, it is admissible regardless of the length of Defendant's detention, fails to recognize that a seizure "that is lawful at its inception can violate the Fourth Amendment if its

manner of execution unreasonably infringes interests protected by the Constitution." <u>Caballes</u>, 543 U.S. at 408. Here, the initial protective seizure of the firearm was permissible, but Officer Smith's actions ran afoul of the Fourth Amendment when he continued to hold both the firearm and Defendant hostage while he searched for evidence of a gun crime completely unrelated to the purpose of the traffic stop, without reasonable suspicion to do so. Accordingly, the interest in protecting officer safety does not save the detention from violating Defendant's Fourth Amendment rights, nor does it justify the prolonged seizure of the firearm.

Second, the Government argues Officer Smith's actions were justified by the automobile exception to the Fourth Amendment's warrant requirement. Under the automobile exception, officers may search a vehicle without a warrant where the vehicle "is readily mobile and probable cause exists to believe it contains contraband." <u>U.S. v. Davis</u>, 997 F.3d 191, 201 (4th Cir. 2021). As above, the Government argues that Defendant's conduct and statements gave rise to probable cause that Officer Smith would find evidence of a gun crime in the car. For the reasons already discussed, the Court disagrees, and finds that the automobile exception is inapplicable because Officer Smith lacked probable cause to believe Defendant was committing a crime for which contraband could be found. Officer Smith could not have found contraband related to the traffic violation at issue here, because in such cases, "there will be no reasonable basis to believe the vehicle contains relevant evidence" for such offenses. <u>Arizona v. Gant</u>, 556 U.S. 332, 343. Further, as explained above, Defendant's admitted possession of a firearm under these circumstances does not give rise to probable cause that he was committing a firearm offense. Accordingly, the automobile exception fails to cure the constitutional defects in Defendant's detention, and the Court OVERRULES Defendant's objections.

Third, the Government alleges the plain view doctrine applies. Under the plain view doctrine, officers may conduct a warrantless seizure if evidence if: "(1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." U.S. v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997). Under the third prong, an "object's incriminating character is immediately apparent" where the officer, upon seeing the object, has probable cause to believe it is either "evidence of a crime or is contraband." Arizona v. Hicks, 480 U.S. 321, 326–27 (1987). However, "[i]f . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object," then the third prong is not satisfied and "the plain-view doctrine cannot justify its seizure." Dickerson, 508 U.S. at 375.

Here, it is undisputed that Officer Smith lawfully initiated the traffic stop, and that for officer safety he was entitled to temporarily seize the firearm. However, the Government first alleges "the firearm in question was concealed within the vehicle," (Doc. No. 26, p. 6), and then declares the "gun could be 'plainly viewed'" inside the vehicle, (id. at 8). The Government cannot have it both ways, and the Court finds that the firearm was not plainly viewed; in fact, Officer Smith testified that "it wasn't in plain view." (Doc. No. 27, p. 21). Still, even if the firearm had been plainly viewed, its incriminating character was not immediately apparent. Defendant was not attempting to conceal it, nor was there an issue with the firearm's serial number, see U.S. v. Legg, 18 F.3d 240, 245 (4th Cir. 1994) (holding that an "obliterated serial number" was immediately apparent evidence of the firearm's incriminating character such that no further investigation was necessary to determine that it was contraband), nor did Defendant's

23

conduct indicate the firearm might be evidence of criminal activity, U.S. v. Forney, No. 3:12-cr-381, 2013 WL 2317700, at *7 (W.D.N.C. May 28, 2013). Thus, it could not—and did not—give rise to probable cause, and the Court holds the plain view doctrine is inapplicable here. Accordingly, the Court OVERRULES the Government's objection.

Finally, the Government contends the M&R improperly relied on events that occurred after Officer Smith seized Defendant's firearm as a basis for suppression. However, this argument is without merit. Absent reasonable suspicion, when the "time reasonably required to complete [the traffic stop's] mission" expires, the officer must allow the defendant to leave; "a traffic stop prolonged beyond that point is unlawful." Rodriguez, 575 U.S. at 357. Thus, when Officer Smith decided that he was not going to issue a citation for either the expired registration or the suspended license, because he did not have reasonable suspicion, he should have informed Defendant that he was free to leave. See U.S. v. Driver, 513 F. App'x 277, 280 (4th Cir. 2013). Instead, he held him for a total of forty-six minutes, during which time Officer Smith was not investigating the original traffic violation in any way. As with the investigation itself, the purpose of the firearm's seizure shifted from officer safety to an unrelated investigation into criminal activity without reasonable suspicion, such that a seizure that was lawful at its inception became unconstitutional. Thus, the prolonged detention violated Defendant's Fourth Amendment rights, and as a result, the firearm must be suppressed. Accordingly, the Court OVERRULES the Government's objection, and AFFIRMS the M&R to the extent that it recommends suppressing the firearm. Therefore, Defendant's Motion to Suppress is GRANTED to the extent it seeks suppression of the firearm.

    2. *The Statements*

24

Finally, for many of the reasons cited above, the Government objects to the M&R's conclusion that Defendant's statements to Officer Smith must be excluded. The Court agrees. Though the prolonged detention requires the suppression of the firearm, the same is not true for Defendant's statements. At the inception of the traffic stop, Defendant informed Officer Smith that there was a firearm in the vehicle, explained that it fell between the seats, and pointed to its location, all while his hands were extended outside of the window of the car. This occurred before any constitutional violation arose, and as such, Defendant's statements regarding the firearm's presence could not have been the product of an unlawful search or seizure. See Murray, 487 U.S. at 536.[9] Defendant's statements were not obtained through the exploitation of the illegal traffic stop, nor were they the result of the unconstitutionally prolonged detention. Wong Sun v. U.S., 371 U.S. 471, 488 (1963).

Rather, Defendant voluntarily informed Officer Smith of the firearm's presence, and any questions Officer Smith asked to secure the firearm are justified by his interest in protecting officer safety. As opposed to investigating Defendant's criminal history following the seizure of the firearm, here, Officer Smith's inquiries related to the firearm's location were "negligibly burdensome" and were asked as a "precaution[] in order to complete his [traffic] mission safely." Rodriguez, 575 U.S. at 356.

Accordingly, the Court SUSTAINS the Government's objection to the M&R's recommendation that the statements be suppressed, REJECTS the M&R's conclusions and recommendations to that extent, and holds that Defendant's initial statements to Officer Smith

---

[9] The Court further notes that the Supreme Court has held that Miranda warnings are not required when an individual is questioned during a routine traffic stop. Berkemer v. McCarty, 468 U.S. 420, 434 (1984); see also U.S. v. Leshuk, 65 F.3d 1105, 1108 (4th Cir. 1995) (citing Terry v. Ohio, 392 U.S. 1 (1968); Berkemer, 468 U.S. at 437–42). Thus, neither the Fourth nor the Fifth Amendment requires the application of the exclusionary rule to suppress Defendant's statements here.

related to the firearm are admissible.  Thus, Defendant's Motion to Suppress is DENIED to the extent it seeks suppression of Defendant's initial statements to Officer Smith.

### E.  Clear Error Review

As set forth above, the only specific objections the Government raised concern whether Officer Smith seized Defendant's firearm consistently with the Fourth Amendment, whether the exclusionary rule applies to Defendant's statements to Officer Smith, and whether reasonable suspicion or probable cause existed to justify the traffic stop.  Defendant's only objection was to whether Officer Smith even had the authority to conduct the traffic stop.  The Magistrate Judge's remaining conclusions, therefore, are reviewed for clear error.  In the absence of a specific, proper, and timely filed objection, the Court need not give any explanation for adopting the M&R.  Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200.  Having carefully reviewed the M&R, the Court finds no clear error as to Magistrate Judge Keesler's findings and conclusions beyond those outlined above.  Accordingly, this Court **AFFIRMS** the remainder of Judge Keesler's M&R.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that for the foregoing reasons:

1.  Magistrate Judge Keesler's M&R, (Doc. No. 24), is

    a.  **AFFIRMED and ADOPTED IN PART**, to the extent it concludes the detention was unconstitutionally prolonged in violation of the Fourth Amendment such that the firearm must be suppressed, and

    b.  **REJECTED IN PART**, to the extent that it concludes the constitutional violation also requires the suppression of Defendant's initial statements to Officer Smith;

2. The Government's Objections to the M&R, (Doc. No. 26), are

   a. **SUSTAINED IN PART** to the extent they relate to the admissibility of Defendant's initial statements, and

   b. **OVERRULED IN PART** in all other respects;

3. Defendant's Objection to the M&R, (Doc. No. 28), is **OVERRULED**; and

4. Defendant's Motion to Suppress, (Doc. No. 15), is

   a. **GRANTED IN PART** insomuch as it seeks the suppression of the firearm seized during the traffic stop, and

   b. **DENIED IN PART** to the extent it seeks suppression of Defendant's initial statements to Officer Smith.

   **IT IS SO ORDERED**.

Signed: March 22, 2023

Frank D. Whitney
United States District Judge

27